**UNITED STATES of America,**
Plaintiff,

v.

**Connie George HOLMES and Joe Bedami,**
Defendants.

No. Cr/AC–127.

United States District Court
E. D. South Carolina,
Columbia Division.

May 13, 1960.

N. Welch Morrisette, Jr., U. S. Atty., William A. Horger, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Irvine F. Belser, Jr., Claud N. Sapp, Columbia, S. C., for defendants.

TIMMERMAN, Chief Judge.

The above entitled case has been tried twice. The first trial resulted in a verdict of guilty. The Fourth Circuit Court of Appeals reversed the judgment entered on that verdict and remanded the case for a new trial. See 271 F.2d 635. The second trial, February 16, 17, 18, 19 and 20, 1960, again resulted in a verdict of guilty and the same sentences that were imposed on the first trial were re-imposed February 23, 1960. On February 29, 1960, the defendants served and filed a written motion "for a new trial * * * on the ground that after the said case had been submitted to the jury and immediately before the said jury began its deliberations * * * extraneous information * * * prejudicial to both defendants was brought to the attention of the jury by an official of the court and that said information was such as to make impossible fair and impartial consideration * * * of the case as to either defendants". The motion was based on attached affidavits of three of the five women jurors in the case, viz., Mrs. Norean M. Dean, Mrs. Juanita H. Marshall, and Miss Martha A. Wessinger.

In her affidavit Juror Dean stated that immediately after the Judge's charge, at about 1:30 P. M., Saturday, February 20, 1960, two Deputy Marshals conducted the jurors to the Jefferson Hotel for lunch; that while the jurors and the Deputy Marshals were seated at a long dining table, waiting to be served, she "commented, I wonder where the defendants are staying", and that Deputy Marshal Davis replied, "I don't know about the Holmes' but I can tell you where Bedami is staying. Maybe I shouldn't be telling you this, but he is in the Lexington County jail serving a six-year sentence".

Juror Marshall, in her affidavit, added something to what was said in Juror Dean's affidavit, viz., "As soon as he [Deputy Marshal] said this, he sort of bit his lips and clammed up. He gave me the impression that he realized he had said something he shouldn't have said".

In her affidavit, Juror Wessinger said, among other statements, "Mrs. Dean, who was sitting two places over to my left, commented that she wondered 'where the defendants are staying'. The Deputy Marshal who was sitting across the table from and almost opposite Mrs. Dean stated in reply, 'I don't know about the Holmes', but Bedami is in jail serving a six-year * * *' I don't recall whether he actually completed his sentence and used the word 'sentence', but that is what I understood him to mean. He caught himself at that point and added something to the effect that 'maybe I shouldn't have said that'".

A "Return to Motions for a New Trial" was filed. In it these contentions were advanced: (1) That the defendants' motion should be dismissed on the ground that it was not timely made and filed, in that it was not made and filed within five days after the verdict was returned, as required by Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. (2) That the affidavits attached to the defendants' motion do not accurately reflect the true statement made by the Deputy Marshal. (3) That the statement actually made by the Deputy Marshal was in no way improper or prejudicial to the rights of the defendants, or either of them. (4) That even if the statements made by the Deputy Marshal were in any way prejudicial to the defendant Bedami they were not preju-

dicial to the defendant Holmes. (5) Canon 23 of the Canons of Professional Ethics of the American and South Carolina Bar Associations is pertinent and reads as follows: " * * * A lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the cause". That the United States Attorney had made no effort to contact any of the jurors to ascertain the truth concerning the claimed occurrence, it being his view "that the proper method and forum is in open court in the presence of counsel for both" sides. To this was added the announcement that all the jurors had been summoned to attend the hearing of the motion, with the concurrence of the Court. To the mentioned return the affidavit of John W. Davis, Deputy United States Marshal, was attached. Among other things, Davis' affidavit contained the following:

" * * * After the jury was seated, a party whose name at the time was unknown but later determined to be Mrs. Dean, asked a question which I thought was directed at me. 'Wonder where the Holmes' are staying?' I answered, 'I do not know where the Holmes' are staying, but I know where Bedami is staying'. Another question was asked as to where, either by Mrs. Marshall or Mrs. Dean, I am not sure which, as there was a lot of talk around the table by the other jurors. My answer to this was, 'Lexington County Jail.' After this, I pushed away from the table, raising my hands and saying, 'No more questions, please.' After this, Mrs. Dean made the remark, 'Well, it makes no difference, we have all read about it in the newspaper.' "

■ All twelve of the jurors testified. Six of them said they heard nothing of the claimed conversation between Juror Dean and Deputy Marshal Davis. The other six were not in complete agreement about just what was said. Upon being closely examined Juror Dean expressed some uncertainty about the expression attributed to the Deputy Marshal in her affidavit to the effect that Bedami was then serving a six-year sentence in the Lexington County jail. However, it was abundantly established that Juror Dean expressed an interest in the whereabouts of the defendants, something that was not at issue in the case. It is also evident that the Deputy Marshal construed the juror's remark or interrogatory as being directed at him. He thereupon disclaimed any knowledge of the whereabouts of Holmes, a disclaimer that hardly could have had a deleterious effect on any right of the defendant Holmes. The Deputy Marshal did know about Bedami and truthfully stated that he was being held in the Lexington County jail. Certainly there was no significance in the statement that the jail where he was kept was the Lexington County jail. In fact it is common knowledge that defendants in criminal cases are often held in jail to await the outcome of their trials.

■ I find no sound basis for concluding that either of the defendants was prejudiced by what the Deputy Marshal said. I even gravely doubt that the words "serving a six-year sentence" were used by the Deputy Marshal. He testified that he did not recall using any such expression. Perhaps some of the jurors had read such a statement in a newspaper. One or more of the women jurors testified that she had seen such a statement in one or both daily newspapers published in Columbia.

■ While the Court is overruling the motion for a new trial, it feels bound to state that it does not acquiesce in or approve the practice apparently followed by counsel in this case; that of personally interviewing jurors after the rendition of a verdict in search of grounds for a new trial. If such a practice should be condoned and thus encouraged, it would soon ruin the jury system; it would be brought into disrepute.

■ Furthermore, the Court wishes to go on record in condemning the con-

duct of both Juror Dean and Deputy Marshal Davis for engaging in the conversation which they undoubtedly did engage in. Regardless of the conversation's lack of harmful consequences, it was in direct conflict with instructions repeatedly given during the trial of the case. On the day this trial commenced, February 16, 1960, and after the jury had been sworn, the Court gave the empaneled jury, in the presence of the defendants, their counsel, and all court officials, including deputy Marshal Davis, the following instructions:

"Ladies and gentlemen of the jury, we are now going to take a recess until tomorrow morning at ten o'clock. It is my responsibility to say to you that as jurors you should be extremely careful not to talk about this case with anybody, or allow anybody to talk to you about it or in your presence about it. If some person should undertake to talk to you about this case, maybe not knowing that you were on the jury, or maybe knowing that you are, it would be your duty, as a sworn officer of this Court, to notify such person that you are a member of this jury and ask them not to talk about it.

"If that person should undertake, notwithstanding your request to the contrary, to continue to talk to you or at you about this case, it would then be your duty, as a juror, to take the name of that person and report it to the Court for appropriate action.

"I say to you, we must try this case, as all other cases here in this Courtroom, upon testimony adduced on the witness stand under oath, in the presence of the parties who are interested, in the presence of the defendants and their counsel and in the presence of the U. S. Attorney and his Assistants who represent the Government.

"In other words, ladies and gentlemen, you and I together represent the character and the integrity of this Court. I think it has been kept clean and I hope and I believe that you and I are going to continue to keep it clean. You will be excused now until ten o'clock tomorrow morning."

On February 17, 1960, the second day of the trial, the Court gave the jury these instructions:

"Ladies and gentlemen of the jury, we are now going to take a recess until three o'clock. I wish to caution you again, as I did on yesterday afternoon, that you should not talk about this case to anybody or in the presence of other people, or allow anybody to talk to you about it.

"I repeat, we are to try this case on testimony that comes from the witness stand under oath in your presence, in my presence, in the presence of the defendants and the counsel engaged in this case; not upon some street corner talk; not on what somebody anonymously might say over a telephone or by any statement coming from any other source other than this witness stand. You would stultify yourselves if you permitted that to be done. It would bring this Court into disrepute, if you permitted it to be done.

"I am excusing you now until three o'clock. Be back in your seats at three o'clock."

Thereafter, from day to day, until the trial was over, the Court continued to repeat similar instructions. If Juror Dean had observed the instructions that were given her there would have been no occasion for this motion. She was asked on the hearing of this motion if she didn't recall such instructions being given her and her answer was, "Yes sir, I remember it". Next she was asked if she remembered those instructions when she was in the hotel dining room. Her answer was, "Oh yes". She was then asked if she didn't care about the instructions that were given her, and her answer was, "Well, your Honor, I had

no idea that that was talking out of line; just making a casual, or asking a casual question. I mean, it didn't much cross —".

I was impressed that Mrs. Dean's attitude was one of indifference as to what the Court's instructions had been; that she wanted to know particularly where the defendant Holmes was staying and she made the inquiry to find out. The juror's conduct should be and it is condemned.

Deputy Marshal Davis should have warned Juror Dean that she was violating the Court's instructions or, failing in that, he should have ignored her questioning comment. He, too, is to be condemned for the part he played in this incident.

I am seriously considering citing both the juror and the Deputy Marshal for contempt of court.

There remains for consideration this issue: Was the motion of the defendants made and filed within the time required by Rule 33, Federal Rules of Criminal Procedure? It is the contention of the Government that Rule 33 is a limitation on the right to make the type motion that the defendants are making to 5 days "after verdict or finding of guilty or within such further time as the court may fix during the 5-day period". · If the Government's position is well taken, defendants' motion will of necessity be denied and dismissed, because the motion was not made and filed within 5 days after the rendition of the verdict or a finding of guilty, nor was the time for making the motion extended by the Court during such 5-day period. However, the defendants strenuously contend that the 5-day limitation is not applicable to the motion which they have made. They construe their motion as one made on newly discovered evidence, sometimes denominated after-discovered evidence.

As I understand the rule concerning the granting of new trials on newly discovered evidence, the defendants' motion is not one for a new trial based on newly discovered evidence as that term is traditionally understood by both Bench and Bar. The new testimony must be material and be competent, —not cumulative, or for the impeachment of another witness; and generally speaking so-called newly discovered evidence is not a sufficient ground for granting a new trial unless it is credible and probably would have changed the result if it had been produced on the trial of the case. It is true that these words appear in the opening sentence of the Rule: "The court may grant a new trial to a defendant if required in the interest of justice", but that declaration is qualified by the thereinafter prescribed limitations as to time. There is nothing in the Rule that makes a collateral attack on the verdict, such as is made by this motion, the equivalent of a motion for a new trial on after-discovered evidence, for which the Rule establishes a two-year limitation. It is to be presumed that the rule makers had in mind the traditional meaning of newly discovered evidence. Nothing in the Rule itself indicates that the rule makers had any different understanding as to what constituted newly discovered evidence. Certainly the claimed newly discovered evidence could not be used in the instant case should it be tried again. To inject such a collateral issue in the case would divert the attention of the jurors away from the main issue, the guilt or innocence of the defendants. By such a course justice would not be promoted; it would be perverted. See United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610.

There are numerous cases in which courts have held that claims of misconduct on the part of jurors did not fall within the classification of newly discovered evidence, as that term is generally understood and applied by the courts. When the Rule says that the claimed newly discovered evidence must be material and must be competent, it is not referring to the materiality or competency of the evidence on the pending motion, if there is one, but to its materiality and competency on the trial of the case.

In Prisament v. United States, 5 Cir., 96 F.2d 865, 866, a fair and understandable definition of newly discovered evidence is taken from the case of Johnson v. United States, 8 Cir., 32 F.2d 127, as follows:

"There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

Taking the foregoing as a guide, it may be said that the defendants have met the conditions of (a), (b) and (c), but not those of (d) and (e). Necessarily a motion for a new trial because of the misconduct of a juror would have to follow an adverse verdict of the jury. Since the rule governing motions for new trials, based on newly discovered evidence, requires diligence, the facts in this case clearly indicate that the diligence exerted in this case in the defendants' behalf is not the kind contemplated by the rule,—the canvassing of jurors in search of something with which to impeach their verdict. This is another evidence that the motion is not of the character claimed for it. The first three verities mentioned in the Johnson case, supra, are not sufficient to warrant the granting of a new trial upon the ground of after-discovered evidence, even if they be regarded as fully established, since more must be made to appear before the motion can be brought within the newly discovered evidence rule. The one designated "(c)", to the effect that the evidence relied on "must not be merely cumulative or impeaching" clearly indicates that this motion is not one for a new trial based upon newly discovered evidence. It relates to nothing that could

have been testified to or that was testified to on the trial, or that could be testified to on a new trial. Then as to verities "(d)" and "(e)" it is indisputably a fact that the evidence tendered for the Court's consideration is not material to any issue involved in the defendants' trial, nor is there a showing that the claimed newly discovered evidence would probably produce an acquittal, if a new trial should be granted. It could not produce an acquittal since it could not be offered in evidence on a new trial, for it could throw no possible light on the guilt or innocence of the defendants.

It is to be regretted that the Supreme Court has not had the occasion to express itself fully in regard to the exact issue here under consideration. However, the case of Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1, clearly shows that the Supreme Court at the time of the filing of the opinion in that case, November 5, 1956, was of the opinion that the term "newly discovered evidence", found in Rule 33, was to be taken in its traditional meaning. While the point here raised was not an issue in the Mesarosh case, the Court, 352 U.S. at page 9, 77 S.Ct. at page 5, did say:

"It must be remembered that we are not dealing here with a motion for a new trial initiated by the defense, under Rule 33 of the Federal Rules of Criminal Procedure, presenting untruthful statements by a Government witness subsequent to the trial as newly discovered evidence affecting his credibility at the trial. Such an allegation by the defense ordinarily will not support a motion for a new trial, because new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial."

The Mesarosh case inferentially supports the views herein expressed.

The evidence and statements by defendants' counsel, heard on the motion for a new trial, clearly indicate that

counsel for defendants had sufficient information concerning the circumstances relied upon in support of the motion for a new trial, within the 5-day period prescribed by Rule 33, to have applied to the Court for an extension of the 5-day limit for making and filing such motion. Why they did not do so, I can only surmise.

The defendants' motion should be denied, first on its merits, and second because it was not timely made and filed. It is so ordered.